UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN SMITH,<br><br>           Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 1:13-cv-01717 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF BEN SMITH AND AGAINST DEFENDANT CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Ben Smith ("Plaintiff") asserts he is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in relying on the testimony of the vocational expert to find he is able to perform work in the national economy. For the reasons set forth below, the action is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §495(g).

**I.     Procedural History**

Plaintiff filed his application for supplemental security income on April 29, 2010, alleging disability beginning July 31, 2008. (Doc. 13-3 at 13.) The Social Security Administration denied his claims initially and upon reconsideration. (Doc. 13-5 at 2-9.) After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on April 18, 2012. (Doc. 13-3 at 13.) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

benefits on June 19, 2012.  (*Id.* at 13-21.)  The Appeals Council denied Plaintiff's request for review of the decision on July 9, 2013.  (*Id*. at 5-7.)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

On October 2, 2013, Plaintiff initiated this action for by filing a complaint for judicial review of the decision denying his application for benefits pursuant to 42 U.S.C. § 405(g).  (Doc. 1)  He filed his opening brief on July 7, 2014, asserting the ALJ's decision lacks the support of substantial evidence and should be remanded.  (Doc. 16.)  Defendant filed a brief in opposition on July 29, 2014.  (Doc. 18.)  Plaintiff did not file a reply.

## II.     Standard of Review

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## III.    Disability Benefits

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**IV.     Administrative Determination**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.[1]  20 C.F.R. § 404.1527.

    **A.     Relevant Administrative Hearing Testimony**

Plaintiff testified with the assistance of an interpreter before the ALJ on April 18, 2012.  (Doc. 13-3 at 29.)  Plaintiff testified that he did "[n]ot really" speak or understand any English.  (Doc. 13-3 at 34.)  However, Plaintiff reported he spoke some English, and that he took his citizenship and driving tests in English when questioned by the ALJ, as follows:

Q: Did you ever speak any English when you were working?

A: No, I did it by myself.  I don't speak much English at work.

Q: Well, not speaking much English and no English are two different things.  My question is did you ever speak any English when you were working?

A: Yes, sometimes.

Q: And what percentage of the time do you think you were speaking English? Like half, 50 percent or 10 percent or what?

---

[1] Plaintiff does not challenge the ALJ's evaluation of the medical evidence in this action.  Accordingly, the Court does not summarize the objective medical evidence contained in the record.

| | | |
|---|---|---|
| A: | About 10 percent. | |
| Q: | Did you pass it? | |
| A: | Yes, three times. | |
| Q: | Are you a U.S. citizen? | |
| A: | Yes. | |
| Q. | And you had to take that test in English as well, correct? | |
| A. | Yes. | |

(Doc. 13-3 at 33-34.)  Further, Plaintiff testified that he took English classes at an adult school for four years, four hours a day and five days a week.  (*Id.* at 35.)

A vocational expert ("VE") testified after Plaintiff at the hearing, and the ALJ asked the VE to assume an individual "the same age, education, language and experience background" as Plaintiff. (Doc. 13-3 at 45.)  The ALJ stated:

> [I]n spite of his testimony, initial testimony where he said that he didn't understand ... any English or speak any English, since he also testified he took the driver's test in English and passed it and took the U.S. citizenship test in English and passed it and he also spoke English at work 10 percent of the time, I find that he can speak basic English.

(*Id.*)  Therefore, the ALJ asked the VE to consider a person who was "[b]asic rudimentary in English for simple tasking."  (*Id.*)  With this in mind, the VE opined a person with the physical and postural limitations identified by the ALJ could not perform Plaintiff's past relevant work.  (*Id.*)  However, the VE believed such a person could perform other light, unskilled work in the regional and national economies, including housekeeping, *DOT*[2] 323.687-014; cafeteria attendant, *DOT* 311.677-010; and can filling and closing machine tender, *DOT* 529.685.282.  (*Id.* at 45-46.)

### B. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined first that Plaintiff had not engaged in

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

substantial activity after the alleged onset date of July 31, 2008. (Doc. 13-3 at 15.) Second, the ALJ found Plaintiff's severe impairments include depressive disorder, adjustment disorder, lumbar degenerative disc disease, lumbago, bilateral C5-6 root lesion and upper plexopathy, and lumbar spine plexopathy. (*Id.*) Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing. (*Id.* at 16.)

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except he can only occasionally reach overhead" and "occasionally climb, balance, stoop, kneel, crouch, or crawl."[3] (Doc. 13-3 at 17.) Further, the ALJ found Plaintiff was "limited to performing simple, repetitive tasks," and was "able to interact appropriately, and deal with routine changes related to simple tasking." (*Id.*) At step four, the ALJ determined Plaintiff was unable to perform his past relevant work, because he was limited to "a restricted range of light work," and the vocational expert characterized Plaintiff's past work "as heavy and unskilled in nature." (*Id.* at 19.) In addition, the ALJ found: "The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 404.1564)." (*Id.*)

At step five, the ALJ found Plaintiff was able to perform light, unskilled work in the national economy, including "housekeeping cleaner," "cafeteria attendant," and "can filling and closing machine tender." (Doc. 13-3 at 20.) Thus, the ALJ concluded Plaintiff was "not under a disability, as defined in the Social Security Act, from July 31, 2008, through the date of th[e] decision." (*Id.*)

**V.      Discussion and Analysis**

Plaintiff asserts the ALJ's decision at step five lacks the support of substantial evidence, because "the ALJ failed to propound a complete hypothetical question to the vocational expert." (Doc. 16 at 6.) At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which

---

[3] The Regulations provide: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162(9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). When eliciting testimony from the VE, the ALJ must pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.*

### A. Parties' arguments

The ALJ found Plaintiff "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." (Doc. 13-3 at 19.) Plaintiff observes that "at the hearing, the ALJ asked the vocational expert to assume otherwise." (Doc. 16 at 8.) Because the ALJ based his step five determination on the testimony of the vocational expert, Plaintiff argues "substantial evidence does not support the ALJ's conclusion that Mr. Smith can perform a significant number of alternate occupations existing in the national economy." (*Id.* at 9.)

On the other hand, Defendant argues the ALJ's conclusion that Plaintiff "is not able to communicate in English" was "a drafting error." (Doc. 18 at 7 n.2.) Defendant explains that the ALJ noted Plaintiff testified "he had completed four years of Adult School English classes" and "conceded that he passed the United States' Citizenship test and Driver's License test in English." (Doc. 18 at 5, citing Doc. 13-3 at 19.) In addition, the ALJ noted Plaintiff "admitted he spoke English 10 percent of the time at his janitor job." (*Id.*; *see also* Doc. 13-3 at 19.) Therefore, assuming the ALJ's conclusion was "a drafting error," Defendant argues and substantial evidence supports a determination that Plaintiff was *not* illiterate, and "could understand and speak simple English." (*Id.* at 5-6.)

Further, Defendant argues that Plaintiff's "several years of work experience" supports a conclusion that "his language skills are not work-prohibitive." (Doc. 18 at 6.) Defendant notes that the vocational expert identified unskilled jobs "with language level 1, meaning that the individual can speak simple sentences using normal word order, and present and past tenses; write simple sentences

containing subject, verb and object, and a series of numbers, names, and addresses; and read two to three syllable words at a rate of 95-120 words per minute." (*Id.*) Because Plaintiff's past relevant work required him to perform at language level 1, Defendant argues that "the only logical inferences are that Plaintiff has level 1 language skills, or b) level 1 language skills were not required to perform the unskilled work." (*Id.* at 7.)

### B. The ALJ's decision lacks the support of substantial evidence

The Court cannot presume, as Defendant would have it, that the conclusion of the ALJ was merely a drafting error. The Court is constrained to the findings of the ALJ and cannot alter the finding of fact authored by the ALJ. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) The ALJ made an explicit finding that Plaintiff was "**not able to communicate in English and considered in the same was as an individual who is illiterate in English**."[4, 5] (Doc. 13-3 at 19, emphasis in original.)

Significantly, the ALJ did not ask the vocational expert whether an individual who was "not able to communicate in English" was able to perform Plaintiff's past relevant work or other work in the national economy or a person who could communicate but was illiterate in English could do so. Rather, the ALJ asked the vocational expert to consider a person who was "[b]asic rudimentary in English for simple tasking." (Doc. 13-3 at 45.) In response, the vocational expert opined that Plaintiff was able to perform jobs that required literacy level 1, which is the lowest level of language development in the *Dictionary of Occupational Titles*. Because the ALJ failed to question the vocational expert regarding whether an individual who is illiterate would also be able to perform the jobs identified, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion

---

[4] Illiteracy is defined as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The regulations explain that the Social Security Administration "consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.*

[5] Though the Court is not entirely clear, it appears that Respondent may be arguing that the ALJ intended to find Plaintiff was able to communicate in English but was illiterate. However, if this is the case, the Court is perplexed as to the finding that he was able to pass his written driver's test and his United States citizenship test in English—both of which imply literacy. If, Respondent is asserting that the ALJ intended to find that Plaintiff *was* able to communicate in English and was *not* illiterate in English, this would be such a significant drafting gaffe that the Court is hard-pressed to believe this is what occurred. In any event, the salient issue is that given the inconsistencies, the Court simply does not know what the ALJ meant. If his intention was truly to make the finding as written, it is wildly inconsistent with the statements he made at the hearing.

that Plaintiff is able to perform work as a housekeeping cleaner, cafeteria attendant, or can filling and closing machine tender.

### C  Remand is appropriate in this matter

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ's opinion appears to be internally inconsistent regarding whether Plaintiff has rudimentary English skills or is to be considered as one who is illiterate, and the Court is unable to determine what limitations the ALJ believes Plaintiff has related to his literacy.[6] This ambiguity cannot be deemed harmless, because it is relevant to the ALJ's ultimate disability conclusion. *See Stout*, 454 F.3d at 1045; *see also Silveira v Apfel*, 204 F.3d 1257, 1261, n.14 (9th Cir. 2000) (explaining that literacy is a vocational factor to be considered at step five to determine whether a claimant can work perform work in the national economy; *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) ("Illiteracy seriously impacts an individual's ability to perform work-related functions, such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision"). Thus, remand for further proceedings is appropriate in this matter for the ALJ to review the evidence related to Plaintiff's literacy and elicit testimony, as needed, from a

---

[6] Notably, the residual functional capacity determination by the ALJ does not limit Plaintiff to tasks that require only rudimentary English skills or tasks that can be performed by an individual who is illiterate. (*See* Doc. 13-3 at 17.)

vocational expert related to the literacy limitations.

## VI.     Conclusion and Order

For the reasons set forth above, the Court finds the ALJ erred by relying upon the testimony of the vocational expert to support his step five determination, because the expert did not consider an individual who was illiterate, as the ALJ determined Plaintiff should be considered.  Because the ALJ failed to apply the proper legal standards, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Ben Smith and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **December 31, 2014**              /s/ Jennifer L. Thurston
                                                                       UNITED STATES MAGISTRATE JUDGE